## LEIGH v. CHATTANOOGA, ROME AND COLUMBUS RAILROAD COMPANY, for use.

1. One who subscribes for capital stock in a railroad company, under a contract entitling him to a certificate therefor upon payment of his subscription, may, in defense to an action by the company to recover the amount thereof, set up that it, after receiving his subscription, had sold and delivered all the stock it was legally entitled to issue, and had thus placed itself in a position where it could not comply with its part of the agreement.

2. Such a defense is not, however, established by evidence showing that the company entered into an executory contract in writing with a third person to transfer to him all "of the common stock of said company," and that by successive assignments this contract had passed to several different persons, it further appearing that the same was never so carried into effect as to prevent the company from delivering to the defendant the stock for which he had subscribed, but that, on the contrary, duly executed certificates of stock, blank as to names and number of shares, had been placed with the company's financial agent in order that they might be properly filled out and delivered to the defendant and other subscribers upon payment therefor; that in this manner the company had all the while retained actual control of the stock subscribed for by the defendant, for the purpose of having the same delivered to him upon compliance with the terms of his subscription; that this purpose was understood and assented to by all of the several assignees; and that, accordingly, at the commencement of the company's action it was in a position to deliver, or cause to be delivered, to the defendant the identical original stock for which he had subscribed.

Argued February 22, — Decided April 1, 1898.

Complaint. Before Judge Candler. Chattooga superior court. June 15, 1897.

*Dean & Dean*, *J. M. Bellah* and *Wesley Shropshire*, for plaintiff in error.

*W. W. Brookes*, *W. T. Turnbull* and *J. D. Taylor*, contra.

LUMPKIN, P. J. In defense to an action brought by the Chattanooga, Rome and Columbus Railroad Company, for the use of one Starnes, against Leigh, upon a contract of subscription for one share of the capital stock of that company, the defendant set up that the plaintiff, after receiving his subscription, had issued, sold, and actually delivered to another all the stock it was legally authorized to issue, and had thus voluntarily placed itself in a position where it was impossible for it

to comply with its part of the contract between itself and him, by the terms of which he was entitled to receive a certificate for the share of stock for which he had subscribed, upon payment for the same.

1. If the defendant had succeeded in establishing by evidence the averments of his answer to the plaintiff's petition, there is no doubt at all that the defense would have been good. The law upon this subject is plain and well settled. It is laid down in 3 Am. & Eng. Enc. L. 903, 904, that: "A party to a contract may break it in one of three ways: (a) by renouncing his liabilities under it; (b) by rendering performance of his promise impossible; (c) by totally or partially failing to perform what he has undertaken." And on page 907 it is said: "If one party by his own act makes the performance of his promise impossible, the other may at once bring an action against him for a breach." The text is abundantly supported by the authorities cited in the notes. It follows necessarily that a party who has made performance upon his own part impossible can not maintain against the other contracting party an action for an alleged breach by the latter of his promise. The learned counsel for the plaintiff in error cited many cases in which contracts of subscription for stock in railroad companies were dealt with, and they established beyond controversy the correctness of the proposition laid down in the first headnote and which he contended was the law controlling the case at bar. The counsel for the defendant in error practically conceded the soundness of this doctrine, but insisted that it had no real bearing upon the present case upon its facts. There being, then, no serious difficulty as to the law of the case, the real question for determination is: does it fall within the rule of law above announced? We will now endeavor to show that it does not.

2. The facts of this case, as disclosed by the evidence in the record, were, in brief, as follows: The Rome & Carrollton Railroad Company, under its charter, issued $600,000 of capital stock and built a narrow-gauge railroad from Rome to Cedartown, prior to August, 1887. Afterwards, the charter was amended, the company's name changed to that of the present

plaintiff, and it was authorized to increase the amount of its capital stock and build a broad-gauge railroad from Chattanooga to Carrollton, which would include the line between Rome and Cedartown, the gauge of which was to be broadened. At a meeting of the stockholders a resolution, authorized by the amended charter, was duly adopted, providing that the capital stock of the company be increased to $2,800,000, and that the excess over and above the original $600,000, viz. $2,200,000, be disposed of by the president and directors for the purpose of ensuring the completion and equipment of a standard-gauge railroad between Chattanooga and Carrollton. Subsequently, a contract was entered into between the railroad company and one Hillman, by the terms of which the former agreed, among other things, to transfer to the latter, or his assigns, 22,000 shares "of the common stock of said company," which was the total number of shares it was authorized to issue in addition to the original 6,000 shares. Hillman upon his part agreed to build and equip the company's road from Chattanooga to Carrollton, and it appears that this part of the contract was complied with by a construction company to which Hillman assigned all of his rights under the contract between himself and the railroad company. A large number of certificates of stock, duly executed by the officials of the railroad company and left blank as to names and number of shares, were deposited with Simon Borg & Co., who were the financial agents of both the railroad and the construction company. Among the certificates so deposited were a number representing 2,354 shares which had been subscribed for by certain persons, including the defendant, and the same were held for the purpose of being delivered to these persons upon compliance with the terms of their subscriptions. It affirmatively appears that these latter certificates were, *by the direction of the railroad company*, set apart and held by Borg & Co., and that they were, after being appropriately filled out, "to be delivered to the railway subscribers along the line as they paid, and were never to be issued or delivered in any other way." This purpose was understood and assented to by Hillman and his assigns. Thus the railroad company actually retained control of the stock for which

the defendant in this case had subscribed; and consequently there has never been a day when he could not have obtained a perfectly regular and valid certificate for the identical original stock he agreed to take. It further appears that the assets of the construction company were lawfully sold out, and that the usee of the plaintiff, as a purchaser at the sale thereof, became entitled to the proceeds of the defendant's subscription to the stock of the railroad company, and that the certificate therefor was, at the time of the commencement of the present action, in the hands of the company's secretary, ready for delivery to the defendant.

It will have been perceived that the original contract between the railroad company and Hillman was executory in its nature, and did not amount to an absolute sale and transfer by the company of its stock to Hillman. Though, upon the face of this instrument, it was apparently contemplated that he should ultimately become the absolute owner of all this stock, other evidence introduced at the trial conclusively shows that the real intent of the parties, as to the 2,354 shares subscribed for by persons along the line of road, was that he should not acquire title, but should have the same held by Borg & Co., in order that he might be able to receive payment therefor and cause the same to be delivered to those entitled thereto. This conclusion is borne out by the subsequent conduct of the railroad company and Hillman and his successors. At any rate, the fact remains that no certificate representing the stock for which the defendant had subscribed was ever actually filled out and delivered in pursuance of the above-mentioned contract; but on the contrary, the certificate therefor, in the manner stated, remained in the custody and under the control of the railroad company, and the latter was therefore in a position at all times to deliver the same to the defendant upon payment by him.

The above statement of the facts is sufficient, we think, to show, without further discussion, that the defendant can not avail himself of the rule of law upon which his counsel relied, and that he is bound to pay for the stock for which he subscribed.

*Judgment affirmed. All concurring, except Cobb, J., absent.*